# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*People v. Giraud*, 2011 IL App (1st) 091261

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERNESTO GIRAUD, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-09-1261 |
| Filed | August 30, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for aggravated criminal sexual assault of his daughter was reduced to criminal sexual assault where the victim's exposure to defendant's HIV infection during the unprotected sexual assault was insufficient to raise the assault to aggravated criminal sexual assault. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-3829; the Hon. Thomas Hennelly, Judge, presiding. |
| Judgment | Affirmed in part and sentence reduced in part; cause remanded. |

| Counsel on Appeal | Michael J. Pelletier and Suzan-Amanda Ingram, both of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Marie Quinlivan Czech, and Lori M. Rosen, Assistant State's Attorneys, of counsel), for the People. |
| | |
| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion. Justices Karnezis and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1 Following a jury trial, defendant Ernesto Giraud was convicted of one count of aggravated criminal sexual assault, two counts of criminal sexual assault, and one count of criminal transmission of HIV. He was sentenced to 30 years in prison for aggravated criminal sexual assault, two 15-year terms for the criminal sexual assault convictions, and 7 years for the criminal transmission of HIV conviction, all to run concurrently. Defendant now appeals alleging that (1) the State failed to prove him guilty beyond a reasonable doubt of aggravated criminal sexual assault because it failed to prove that defendant threatened or endangered the victim's life during the sexual assault, and (2) the prosecutor's comments during rebuttal closing arguments improperly shifted the burden of proof to defendant. We reduce defendant's aggravated criminal sexual assault conviction to criminal sexual assault and remand the case for resentencing based on the reduced conviction. We also find that defendant's sentence for criminal transmission of HIV should run consecutively, rather than concurrently, to the criminal sexual assault sentences, and we find that the prosecutor's comments in rebuttal closing arguments did not constitute reversible error.

¶ 2                                    I. BACKGROUND

¶ 3 Defendant was charged with numerous counts stemming from allegations that he engaged in sexual intercourse with his teenage daughter on multiple occasions while he was infected with human immunodeficiency virus (HIV). One of the charges enumerated in defendant's indictment was aggravated criminal sexual assault, which stated that while he was committing the offense of criminal sexual assault, he "acted in such a manner as to threaten or endanger the life of [T.G.], to wit: [defendant] is HIV positive and had unprotected sex with [T.G.], in violation of *** section 12-14(a)(3) [(720 ILCS 5/12-14(a)(3) (West 2010))]."

¶ 4 The following facts were gleaned at trial. T.G., the victim, testified that at the time of trial she was 16 years old. When she was five years old her mother died, so she lived with her grandmother until the summer of 2006. When she was 13 years old, she moved in with her father (defendant), and his wife in their two-bedroom apartment in Chicago. Both T.G. and

defendant knew that defendant was HIV positive and that he took medication to treat the disease.

¶ 5   A couple of days before Thanksgiving of 2007, when she was 14 years old, T.G. was alone in her bedroom. Defendant said he wanted to show her something and entered her room and locked the door behind him. He told her to take off her clothes, and she resisted. He grabbed her by the hands and pushed her on the bed where she fell on her back. He held her down with one arm and used his free arm to unbuckle her jeans. She pushed him off and attempted to run to the door, but defendant blocked her. He reached into the dresser for a condom, got back on the bed and grabbed T.G., and tried to put on the condom. T.G. looked away because she "didn't want to be there at that moment." She testified that she did not know whether defendant ever put on the condom. Defendant then put his penis into her vagina and started having sex with her. After about a minute, T.G. pushed defendant off and ran into the bathroom, locking the door. Defendant told her to "get the f***k out" and threatened that if she ever told anyone what happened, she and her family would be hurt. T.G. got in the shower and felt wetness on her body. She kept scrubbing herself with soap to get rid of the feeling.

¶ 6   Approximately two weeks later, T.G. was inside her locked bedroom when defendant began knocking and then picked the lock. He told T.G. to take off her clothes but T.G. refused and tried to walk out of the room. Defendant grabbed her by her hair and forced her down on the bed. He pulled off her pants and held her down while he forced his penis into her vagina. T.G. did not know if defendant wore a condom.

¶ 7   There were approximately four more times where defendant forced his penis into T.G.'s vagina between Thanksgiving and Christmas of 2007. After T.G.'s fifteenth birthday in December, and into early January 2008, defendant forced T.G. to have sex with him about two additional times. Each act occurred in either T.G.'s bedroom or defendant's bedroom. The last occurrence took place in January 2008. Defendant came in her room and grabbed her and started to unbuckle her pants. T.G. started crying after defendant inserted his penis in her vagina, so he pulled out and walked away. T.G. was not sure if he used a condom that time.

¶ 8   On January 24, 2008, T.G. went to her grandmother's house and ingested an entire bottle of Tylenol pills. She passed out on the bathroom floor, where T.G.'s grandmother found her. T.G.'s sister then brought her to the hospital where her stomach was pumped. At the hospital, T.G. was hysterical and begged her sister not to call her father. T.G.'s sister demanded to know why, and T.G. "told her everything." T.G.'s sister then called the police and defendant was arrested.

¶ 9   Chicago police detective De La Torre spoke to defendant at the police station, whereupon defendant told De La Torre that he had sex with T.G. on four occasions, the first in November 2007, and the last time about two or three weeks earlier. Defendant claimed that T.G. enjoyed having sex with him. He stated that he used a condom most of the time except for the first occasion.

¶ 10   Assistant State's Attorney Antara Nath spoke with defendant and obtained a written statement from him. In that statement, defendant stated that in November 2007, he and T.G.

had sex for about five minutes. He did not wear a condom, but ejaculated outside of her vagina. During the other occurrences, defendant claimed to have worn a condom. Defendant further claimed that T.G. enjoyed the sexual encounters and provoked them.

¶ 11 At trial, defendant testified that he suffered from diabetes, high blood pressure, and HIV. He must take medications for these conditions after breakfast. When he left with the officer on the morning of his arrest, he had not eaten breakfast and had not taken his medication. He had last eaten soup the day before at around 5 p.m. Once at the police station, he was placed into the lockup until 5 or 6 p.m. and was not given food during this time. Defendant denied ever admitting any sexual contact with T.G. during his conversation with the detectives. Defendant testified that he did not know he could ask for medication, and he was feeling bad and his vision was blurry. He did not recall signing a form with his rights in English and Spanish. When confronted with the signatures on the pages of the statement, defendant said that several of them did not look like his signature. He denied telling the State's Attorney that he had engaged in sexual acts with T.G.

¶ 12 During closing arguments, defense counsel highlighted the fact that defendant testified as to his having diabetes, his poor eyesight, and his lack of food prior to giving his written statement. In rebuttal closing arguments, the prosecutor commented that although defendant testified as to all his medical conditions, he did not call his doctors to corroborate his testimony or lend credibility to his testimony.

¶ 13 The jury convicted defendant of one count of aggravated criminal sexual assault, two counts of criminal sexual assault, and one count of criminal transmission of HIV. The trial judge sentenced defendant to 30 years for aggravated criminal sexual assault, 15 years for each of the criminal sexual assault convictions, and 7 years for the criminal transmission of HIV conviction, all to run concurrently. Defendant now appeals.

¶ 14                                II. ANALYSIS

¶ 15 On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt of aggravated criminal sexual assault because it failed to prove the aggravating factor of threatening or endangering the victim's life during the commission of the offense, and that the prosecutor's comments during rebuttal closing argument improperly shifted the burden of proof to defendant.

¶ 16                      A. Aggravated Criminal Sexual Assault

¶ 17 Defendant's first argument on appeal is that the State failed to prove him guilty of aggravated criminal sexual assault. When considering a challenge to a criminal conviction based upon the sufficiency of the evidence, it is not our function to retry the defendant. *People v. Hall*, 194 Ill. 2d 305, 329-30 (2000). Rather, our inquiry is limited to "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); accord *People v. Cox*, 195 Ill. 2d 378, 387 (2001). It is the responsibility of the trier of fact to "fairly *** resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from

basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Testimony may be found insufficient under the *Jackson* standard, but only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *People v. Everhart*, 405 Ill. App. 3d 687, 704 (2010) (citing *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)). Only where the evidence is so improbable or unsatisfactory as to create reasonable doubt of the defendant's guilt will a conviction be set aside. *Hall*, 194 Ill. 2d at 330.

¶ 18    A person commits the offense of criminal sexual assault when he commits an act of sexual penetration by the use of force or threat of force. 720 ILCS 5/12-13(a)(1) (West 2010). A person commits the offense of *aggravated* criminal sexual assault when he commits criminal sexual assault and during the assault, an aggravating factor is present. 720 ILCS 5/12-14(a) (West 2010). Here, defendant admits that his actions constituted criminal sexual assault, but argues that the State failed to prove beyond a reasonable doubt the aggravating factor for which defendant was charged and which elevated the offense to aggravated criminal sexual assault. Defendant was charged and convicted pursuant to section 12-14(a)(3) of the Criminal Code (now section 11-1.30(a)(3) of the Code), which states in pertinent part:

> "(a) The accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault and any of the following aggravating circumstances existed during *** the commission of the offense:

> * * *

> (3) the accused acted in such a manner as to threaten or endanger the life of the victim or any other person[.]" 720 ILCS 5/12-14(a)(3) (West 2010).

¶ 19    The jury found that, when defendant exposed T.G. to HIV when he forced her to have unprotected sex with him, defendant threatened or endangered T.G.'s life. Defendant contends that exposing T.G. to HIV did not constitute threatening or endangering T.G.'s life *during the commission of the criminal sexual assault* because the threat or danger to T.G.'s life was not immediate. In other words, defendant argues that the statute contemplates that the threat or danger to the victim's life during a criminal sexual assault must be immediate and pose a risk *during* the assault in order to be elevated to aggravated criminal sexual assault. Defendant contends that exposure to HIV does not always lead to infection, and even if a person contracted HIV during a sexual assault, that person's life could not become endangered or threatened during the course of the criminal sexual assault.

¶ 20    The State initially responds that defendant has waived this issue on appeal because he failed to raise it in his motion for a directed finding or in his posttrial motion. While normally the failure to raise an issue in a written posttrial motion results in a waiver of that issue on appeal, one exception to this rule is a challenge to the sufficiency of the evidence. *People v. Allen*, 288 Ill. App. 3d 502, 505 (1997) (citing *People v. Enoch*, 122 Ill. 2d 176, 187-90 (1988)). Therefore, defendant's claim that the State failed to prove a material allegation (*i.e.*, defendant threatened or endangered the victim's life during the commission of criminal sexual assault) may be raised for the first time on appeal. *Id.*

¶ 21    The parties here do not dispute the underlying facts. Both parties agree that defendant

-5-

committed criminal sexual assault when he forced T.G. to have unprotected sexual intercourse with him and ejaculated inside of her. The parties disagree, however, as to whether such undisputed evidence is sufficient to satisfy the offense of aggravated criminal sexual assault due to defendant's status as an HIV carrier. The parties dispute whether the exposure of HIV satisfies the element of threatening or endangering a person's life during the commission of the criminal sexual assault. As stated above, defendant argues that the aggravating element was not satisfied because his behavior must be such that he puts the victim's life in danger at some point in time during the commission of the sexual assault, or that defendant's actions could result in the victim's death during the commission of the crime. The State contends that it is not necessary for the victim's life to be threatened or endangered only for the duration of the criminal sexual assault but, rather, that defendant need only act in a way, during the commission of the offense, that could pose a risk of death to the victim at any point in the future. Accordingly, we must first look to the meaning of "during the commission of the offense" before we can make a determination as to whether the evidence presented raises criminal sexual assault to aggravated criminal sexual assault as contemplated by the statute.

¶ 22    The principles of statutory interpretation dictate that "[a] reviewing court's objective in construing a statute is to give effect to the legislature's intent." *People v. Cardamone*, 232 Ill. 2d 504, 512 (2009). "Accordingly, we consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it." *Id*. (citing *People v. Davis*, 199 Ill. 2d 130, 135 (2002)). " 'The best indication of legislative intent is the statutory language, given its plain and ordinary meaning.' " *Id*. (quoting *People v. Christopherson*, 231 Ill. 2d 449, 454 (2008)).

¶ 23    The statute states that a person commits aggravated criminal sexual assault if that person commits criminal sexual assault and any aggravating circumstances exist "during *** the commission of the offense." 720 ILCS 5/12-14(a)(1) through (a)(10) (West 2010). Illinois case law has interpreted that phrase to mean that the aggravating factor must occur contemporaneously with the criminal sexual assault. See *People v. Potts*, 224 Ill. App. 3d 938 (1992) (to prove aggravated criminal sexual under the "bodily harm" element, State had to prove that the bodily harm was contemporaneous to the criminal sexual assault, not after). Here, while the exposure to HIV was contemporaneous with the sexual assault, T.G.'s life was not threatened or endangered *during the course of the assault*.

¶ 24    Moreover, when looking at Illinois cases that have discussed the particular aggravating element at issue in this case, it is apparent to us that defendant's actions must be such that a victim's life is threatened or endangered while the criminal sexual assault is taking place. There are very few Illinois cases that discuss the particular aggravating element of threatening or endangering a person's life, which is the element at issue in this case. We will nevertheless review the relevant cases in Illinois that discuss section 12-14(a)(3) to see how Illinois has applied the aggravating factor of acting in a manner that threatens or endangers a person's life during the commission of criminal sexual assault.

¶ 25    The court in *People v. Ramsey*, 147 Ill. App. 3d 1084 (1986), found that the victim's life was threatened or endangered during the commission of criminal sexual assault due to the method of the assault, plus the fact that one of the defendants threatened to strip the victim,

beat her, and force her to walk home. During the commission of the offense, one of the defendants told another defendant to get a shotgun out of the trunk and threatened to kill the victim. One of the defendants then went to the back of the car. Each defendant had sexual intercourse with the victim. Afterwards, one of the defendants suggested that they strip the victim and make her walk home, or to take her to a different city. Another defendant suggested that they could simply use the shotgun and kill her. *Ramsey*, 147 Ill. App. 3d at 1087. The court found that such facts established that defendants "acted in a manner such as to threaten complainant's life under section 12-14(a)(3)." *Id*. at 1090.

¶ 26        In *People v. Zernel*, 259 Ill. App. 3d 949 (1994), the court found that threatening a victim with a weapon, even if proof of a display of that weapon is never established, constitutes threatening or endangering a person's life during the commission of criminal sexual assault. In that case, defendant and the victim were in defendant's apartment. Defendant grabbed the victim from behind and held a knife to her throat. He then released her and said he would kill her unless she did what he wanted. He boasted that he could kill her with his bare hands if he wanted to. He also said he had a gun and displayed a dark object. He told the victim that he would shoot her in the back if she ran. Defendant threatened to kill her and come after her family if she did not do as he said. *Zernel*, 259 Ill. App. 3d at 953. The court found that defendant's behavior was such that he threatened or endangered the victim's life during the criminal sexual assault pursuant to section 12-14(a)(3) even though there was no proof of a gun.

¶ 27        Our supreme court, in *People v. McCoy*, 207 Ill. 2d 352 (2003), did not disturb the appellate court's finding that the defendant threatened or endangered the victim's life when he placed a pillow over the victim's face during the commission of criminal sexual assault.

¶ 28        In the recent case of *People v. Everhart*, 405 Ill. App. 3d 687 (2010), the defendant grabbed the victim from behind and told her not to scream. He placed an object to the victim's head and asked her if she knew what it was. He made her reach up and touch the object. The victim testified that it felt like a gun. The defendant said, " 'If you scream or fight, I'll blow your f---ing head off.' " *Everhart*, 405 Ill. App. 3d at 689. He then sexually assaulted the victim, and afterwards told her not to scream or make any noise or he would " 'blow [her] f---ing head off again.' " *Id*. at 690. The trial court convicted defendant of aggravated criminal sexual assault, and defendant appealed, alleging that the State failed to prove beyond a reasonable doubt that he acted in a manner which threatened or endangered a life as required under section 12-14(a)(3) of the Code. *Id*. at 703-04. Defendant contended that the State's evidence was insufficient to prove the aggravating factor because it showed that the offender verbally threatened the victim, but did not commit any life-threatening acts during the sexual assault. This court found that defendant committed an overt act when he placed an object to the victim's head and threatened to "blow [her] brains out" if she did not comply. The court found that a rational trier of fact could have found that defendant acted in such a manner as to threaten or endanger the victim's life during the commission of the offense. *Id*. at 705.

¶ 29        Finally, in *People v. Singleton*, 217 Ill. App. 3d 675 (1991), the trial court found a defendant guilty of aggravated criminal sexual assault when defendant threatened to kill the victim's family if she did not comply, and then pushed her onto the bed before committing

criminal sexual assault. However, the appellate court reversed. On appeal, the court found that "it must be overt acts by the defendant *** which threaten or endanger a victim's life, and that the life-threatening acts must occur during the commission of the offense." *Id*. at 687. The court expounded on this, stating that "[p]rior violent acts against a victim, remote in time from the sexual molestation charged, are insufficient to support that element of the offense of aggravated criminal sexual assault that the defendant's acts threatened or endangered a victim's life." *Id*. The act of pushing the victim onto the bed was not viewed as life-threatening because "[t]here was no evidence that the victim sustained any type of physical injury, not even a bruise, from the defendant's pushing her onto the bed at the time of his sexual violation of her." *Id*.

¶ 30     Accordingly, from these few cases that discuss section 12-14(a)(3), it is evident that those acts that have constituted threatening or endangering a person's life are overt acts that must threaten or endanger a person's life during the commission of the offense. In the case at bar, there is no evidence that defendant's actions threatened the victim's life during the sexual assault. We cannot say that mere exposure to HIV, without more, rises to aggravated criminal sexual assault as contemplated by section 12-14(a)(3), because HIV exposure could not pose an immediate risk to the victim's life while defendant was in the act of committing sexual assault to the victim. In other words, while exposing someone to HIV can result in transmitting a life-threatening disease to that person, it cannot threaten or endanger someone's life *during* the commission of the criminal sexual assault.

¶ 31     Moreover, we note that if T.G. had actually contracted HIV, defendant could have been charged with aggravated criminal sexual assault pursuant to section 12-14(a)(2) of the statute. See 720 ILCS 5/12-14(a)(2) (West 2010). Section 12-14(a)(2) elevates criminal sexual assault to aggravated criminal sexual assault if the defendant causes bodily harm to the victim. 720 ILCS 5/12-14(a)(2) (West 2010). "Bodily harm" is defined in the statute as inclusive of sexually transmitted diseases. 720 ILCS 5/11-0.1 (West 2010). Accordingly, if T.G. had contracted HIV from defendant, defendant presumably would have been charged under section 12-14(a)(2) of the statute instead of section 12-14(a)(3).[1]

¶ 32     However, T.G. was merely exposed to HIV and did not contract it. In 1983, Illinois passed a law specifically criminalizing the transmission of HIV, which includes mere exposure to HIV without actual contraction. See 720 ILCS 5/12-5.01 (West 2010). If a person is convicted of criminal transmission of HIV, as well as either criminal sexual assault, aggravated criminal sexual assault, or predatory criminal sexual assault of a child, sentences must be imposed consecutively rather than concurrently. See 730 ILCS 5/5-8-4(a) (West

---

[1]Furthermore, we are aware of other jurisdictions that have considered an HIV-infected person's sexual organs and fluids as a "deadly weapon" and convicted those people of aggravated criminal sexual assault based on the section of the statute that prohibits displaying a deadly weapon during the course of criminal sexual assault. See *Najera v. State*, 955 S.W.2d 698, 700-01 (Tex. App. 1997). In the case at bar, however, defendant was charged pursuant to section 12-14(a)(3) and not section 12-14(a)(1) (720 ILCS 5/12-14(a)(1) (West 2010)), which elevates criminal sexual assault to aggravated criminal sexual assault if the defendant displays a deadly weapon during the criminal sexual assault.

2002). Accordingly, a person who commits criminal sexual assault while exposing another to HIV (without actually giving that person HIV), receives a longer sentence than someone who commits sexual assault without exposing someone to HIV. But that person receives a shorter sentence than someone who either threatens or endangers a person's life during the criminal sexual assault (720 ILCS 5/12-14(a)(3) (West 2010)), or who actually gives someone HIV during the criminal sexual assault (720 ILCS 5/12-14(a)(2) (West 2010)).

¶ 33    The fact that the legislature criminalized the act of exposing someone to HIV, combined with the fact that sentence for such crime is to run consecutive to sexual assault convictions, shows us that the legislature intended to make HIV exposure its own separate crime, and not an aggravating factor to elevate criminal sexual assault to aggravated criminal sexual assault. We find further support for this proposition in *People v. Dempsey*, 242 Ill. App. 3d 568, 594 (1993). In that case, the defendant was convicted of aggravated criminal sexual assault based on the fact that the defendant was over 17 years of age while the victim was under 13 years of age, and he was also convicted of criminal transmission of HIV. On appeal, the defendant contended that he could not be convicted of both crimes due to a violation of the one-act, one-crime rule. This court found that the two convictions were not based upon the same physical act because bodily fluid exposure was not required for defendant's conviction for aggravated criminal sexual assault, whereas it was required for criminal transmission of HIV. The court stated that "aggravated criminal sexual assault may be committed without the exposure to any bodily fluid." *Id*. In the case at bar, however, defendant was charged with aggravated criminal sexual assault based on the fact that he exposed T.G. to his bodily fluids. The aggravating factor in this case was defendant's exposure of HIV to T.G. Accordingly, defendant could not have been convicted of aggravated criminal sexual assault unless he exposed T.G. to his bodily fluids. Thus, allowing the two convictions to stand would implicate one-act, one-crime concerns and lends further support for our conclusion that the legislature did not intend to collapse these two statutes.

¶ 34    Because we find that HIV exposure alone during criminal sexual assault is not enough to raise criminal sexual assault to aggravated criminal sexual assault under section 12-14(a)(3), it follows that no rational trier of fact could have found that the evidence of defendant's unprotected sex with the victim during the criminal sexual assault could rise to aggravated criminal sexual assault, and the conviction must be overturned.

¶ 35    However, although we find that the evidence in the instant case did not rise to the level of aggravated criminal sexual assault, we find that the evidence is sufficient to prove that defendant committed the offense of criminal sexual assault. Under the broad powers granted by the Supreme Court Rule 615(b)(3) (Ill. S. Ct. R. 615(b)(3)), we may reduce the degree of an offense when a lessor included offense is involved. *People v. Boyer*, 138 Ill. App. 3d 16, 19 (1985). We remand for resentencing based on that reduction. See *People v. Brials*, 315 Ill. App. 3d 162, 175 (2000) (reducing defendants' convictions for aggravated criminal sexual assault to the lesser offense of criminal sexual assault and remanding the case to the trial court for resentencing on the reduced charges).

B. Rebuttal Closing Arguments

¶ 37    Defendant's second argument on appeal is that the prosecutor's comments in rebuttal closing arguments deprived him of a fair trail. Specifically, defendant contends that the prosecutor improperly shifted the burden of proof to the defendant by asking the jury to consider the fact that defendant failed to present a doctor to corroborate his claims that his diabetic condition rendered his statement to police unreliable. The State responds that the prosecutor's comments were in response to defendant's closing argument and were comments on the evidence presented at trial.

¶ 38    Before reaching the merits of this argument, however, we note that the State first alleges, and defendant admits, that defense counsel failed to object to the allegedly improper comments during closing arguments, and thus the issue is waived on appeal. See *People v. Allen*, 222 Ill. 2d 340, 351 (2006) (a defendant must make a timely objection at trial, as well as raise the issue in a posttrial motion, in order to preserve an issue on appeal). Defendant nevertheless urges us to review this issue pursuant to the plain error doctrine.

¶ 39    The plain error doctrine is a familiar one. It permits a reviewing court to consider unpreserved error when "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189 (2010). A reviewing court typically undertakes plain error analysis by first determining whether error occurred at all. If error is found, the court then proceeds to consider whether either of the two prongs of the plain error doctrine have been satisfied. See *Sargent*, 239 Ill. 2d at 189-90. "Under both prongs, the burden of persuasion rests with the defendant." *Id*. at 190 (citing *People v. Naylor*, 229 Ill. 2d 584, 593 (2008)).

¶ 40    Here, defendant urges us to review the alleged error under the second prong of the plain error doctrine. The purpose of the second prong of the plain error doctrine is to guard against errors that erode the integrity of the judicial process and undermine the fairness of the defendant's trial. *Id*. "Unlike the first prong, prejudice need not be established. Rather, because of the importance of the right involved, prejudice is presumed." *Id*. (citing *People v. Herron*, 215 Ill. 2d 167, 187 (2005)). "[I]n order for statements to be considered plain error they must be either 'so inflammatory that defendant could not have received a fair trial, or so flagrant as to threaten [the] deterioration of the judicial process.' " *People v. Phillips*, 127 Ill. 2d 499, 524 (1989) (quoting *People v. Albanese*, 104 Ill. 2d 504, 518 (1984)).

¶ 41    Defendant claims that the prosecutor improperly commented on defendant's failure to present evidence or call witnesses, thus shifting the burden of proof to defendant. Defendant specifically complains of the following comments made by the prosecutor in rebuttal closing arguments:

> "And just because [defendant] has no burden doesn't mean he sits there powerless. He told you about all these doctors and how he was hospitalized, and all of these people had the intimate knowledge of the workings of his personal problems, his diabetes, his high blood pressure, his HIV. Where are those doctors? Where are those

doctors to tell you, 'Hey, he was really bad that day, insulin dependent, and he would go loopy if he hadn't had his medication.' I am in no way implying that he has any burden, but doggone it, when he is going to make those kind of allegations, back it up. He has the power of subpoena. He supposedly has all these doctors. This is his medical position that led him saying he put his penis into his daughter's vagina, that he ejaculated without a condom. Doggone it, back it up."

¶ 42    Defendant argues that despite the prosecutor claiming she was "in no way implying that [defendant had] any burden," her statements show that she was indeed implying that defendant had a burden to present evidence, which was improper. See *People v. Weinstein*, 35 Ill. 2d 467, 470 (1966) ("the prosecution has the burden of proving beyond a reasonable doubt all the material and essential facts constituting the crime. [Citations.] The burden of such proof never shifts to the accused, but remains the responsibility of the prosecution throughout the trial.").

¶ 43    "Prosecutors are afforded wide latitude in closing argument." *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007). Prosecutors may argue to the jury facts and reasonable inferences drawn from those facts. *People v. Kliner*, 185 Ill. 2d 81, 151 (1998). "[C]losing arguments must be viewed in their entirety, and the challenged remarks must be viewed in context." *Wheeler*, 226 Ill. 2d at 122. A prosecutor may respond to comments by defense counsel which clearly invite a response. *Kliner*, 185 Ill. 2d at 154. "[C]omments made in closing argument must be considered in the proper context by examining the entire closing arguments of both the State and the defendant." *Id*.

¶ 44    We will now examine the context in which the prosecutor's remarks were made. During defense counsel's closing argument, he argued:

"Look at allegedly the statement [defendant] gave, look at the signatures, look at the type of print on those signatures. Look at how it's written.

And then look at the content of what's in those alleged statements. A father is being accused of allegedly raping his daughter, and he goes to the police station and says, 'I did it. I rubbed it. I took it out. I used a condom.' Just like that. He is at the station from 9 o'clock until 5. He hasn't eaten anything, hasn't taken his medication, doesn't have his glasses.

***

We have testimony from [defendant]. [The police] took all of his personal belongings, his wallet, his glasses, and after he is booked and his picture taken, he goes into the lock-up.

He didn't eat breakfast at that time. He is diabetic. And people who have diabetes, they have vision problems. Some people go blind with diabetes.

***

Yet by this time [defendant] is in jail. By this time, [he] has numbers on his hand. At this time [defendant] has no glasses.

***

[Assistant State's Attorney Nath] gets there after they again ask him questions.

-11-

He still hasn't taken his medication, he doesn't have his glasses, he hasn't eaten."

¶ 45    In response, the prosecutor argued in rebuttal:

"And the defendant had absolutely no burden in this case. None. He doesn't have to put on one witness. He doesn't even have to really ask one question. His counsel doesn't have to ask one question. We have the burden beyond a reasonable doubt. It is a burden that we accept. But once he puts on evidence, you can judge it just the same as you judge any other evidence in this. And just because he has no burden doesn't mean he sits there powerless.

He told you about all these doctors and how he was hospitalized, and all of these people had the intimate knowledge of the workings of his personal problems, his diabetes, his high blood pressure, his HIV.

Where are those doctors? Where are those doctors to tell you, 'Hey, he was really bad that day, insulin dependent, and he would go loopy, his eyes would go loopy if he hadn't had his medication.' I am in no way implying that he has any burden, but doggone it, when he is going to make those kind of allegations, back it up. He has the power of subpoena. He supposedly has all these doctors. This is his medical position that led him saying he put his penis into his daughter's vagina, that he ejaculated without a condom. Doggone it, back it up."

¶ 46    In so responding, we find that the prosecutor did not improperly shift the burden of proof to defendant. See *Kliner*, 185 Ill. 2d at 155 (holding that the burden of proof was not shifted when the prosecutor indicated on rebuttal that defendant could have called a certain witness); *People v. Redd*, 173 Ill. 2d 1, 31 (1996) (holding that the burden of proof was not shifted when the prosecutor, in closing argument, referred to the defendant's right to " 'subpoena each and every witness he may want to and put anybody at all on the witness stand' "). In fact the prosecutor acknowledged that the burden of proof was on the State.

¶ 47    Moreover, we find that the prosecutor was merely commenting on the evidence presented at trial and reasonable inferences drawn therefrom. See *Kliner*, 185 Ill. 2d at 151 (prosecutors may argue to the jury facts and reasonable inferences drawn from those facts). "[I]f other evidence tends to prove the guilt of a defendant and he fails to bring in evidence within his control in explanation or refutation, his omission to do so is a circumstance entitled to some weight in the minds of the jury, and, as such, is a legitimate subject of comment by the prosecution." *People v. Williams*, 40 Ill. 2d 522, 529 (1968). Further, "if it is developed in a trial that a witness exists, presumably under the control of a defendant, who can throw light upon a vital matter, and he is not produced, certainly a jury may fairly consider that fact, and, likewise, counsel would have a legitimate right to comment thereon." *Williams*, 40 Ill. 2d at 528; *People v. Adams*, 109 Ill. 2d 102, 120-21 (1985). Here, the examination and argument only reflected on the quality and credibility of the evidence that defendant presented. See *People v. Gorosteata*, 374 Ill. App. 3d 203, 218 (2007). The comments made by the prosecutor, when viewed in the entire context of the closing arguments, do not reach to such a level as to be construed as inflammatory or a flagrant threat to the judicial process. See *Phillips*, 127 Ill. 2d at 509-10.

¶ 48                                   C. Sentencing

¶ 49       Both parties agree that the trial court erred in sentencing defendant. As discussed above, the sentence for criminal transmission of HIV is to run consecutively to the criminal sexual assault statutes, not concurrently. 730 ILCS 5/5-8-4(a) (West 2002). In this case, the trial court improperly ordered all of defendant's sentences to run concurrently. Accordingly, we remand to the trial court for resentencing.

¶ 50                                  III. CONCLUSION

¶ 51       For the foregoing reasons, we reduce the aggravated criminal sexual assault conviction to criminal sexual assault, affirm the remaining convictions, and remand for resentencing in accordance with this opinion.

¶ 52       Affirmed in part and sentence reduced in part; cause remanded.