# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *People v. Giraud*, 2012 IL 113116

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ERNESTO GIRAUD, Appellee. |
| Docket No. | 113116 |
| Filed | November 29, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The statute permitting criminal sexual assault to be elevated to aggravated criminal sexual assault for threatening or endangering the life of the victim during the commission of the offense is properly construed not to apply to a defendant who exposed the victim to HIV knowing he was positive for it. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Thomas Joseph Hennelly, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. |

| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins and Carol L. Gaines, Assistant State's Attorneys, of counsel), for the People. |
| | |
| | Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Suzan-Amanda Ingram, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee. |
| | |
| Justices | JUSTICE GARMAN delivered the judgment of the court, with opinion. |
| | Chief Justice Kilbride and Justices Freeman, Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

## OPINION

¶ 1    Defendant was convicted in the circuit court of Cook County of multiple counts, including one count of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(3) (West 2006)). The victim was his teenage daughter. The aggravating factor found by the jury was that "during *** the commission of the offense," he "acted in such a manner as to threaten or endanger the life of the victim" (*id.*), because on at least one occasion, he had forcible intercourse with her without wearing a condom, knowing that he was HIV positive. The appellate court reduced this conviction to criminal sexual assault (720 ILCS 5/12-13 (West 2006)), on the basis that the victim was neither threatened nor her life endangered during the assault. 2011 IL App (1st) 091261, ¶ 30. We allowed the State's petition for leave to appeal pursuant to Supreme Court Rule 315 (eff. Feb. 26, 2010).

¶ 2    The facts of the multiple assaults, which took place over several months, are recounted in the appellate court's opinion, 2011 IL App (1st) 091261, ¶¶ 3-7, and need not be repeated here because the underlying facts are not in dispute. Although the victim was exposed to HIV during at least one of the assaults, she did not contract the virus as a result.

¶ 3                                    ANALYSIS

¶ 4    The statutory language at issue, section 12-14(a)(3) of the Criminal Code of 1961, states: "The accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault and any of the following aggravating circumstances existed during *** the commission of the offense: *** (3) the accused acted in such a manner as to threaten or endanger the life of the victim or any other person." 720 ILCS 5/12-14(a)(3) (West 2006).

¶ 5    The State argues that the appellate court usurped the function of the trier of fact by concluding that "no rational trier of fact could have found that the evidence of defendant's unprotected sex with the victim during the criminal sexual assault could rise to aggravated

criminal sexual assault." 2011 IL App (1st) 091261, ¶ 34. However, the appellate court understood that it was deciding a question of law when it interpreted the statute to mean that "HIV exposure alone during criminal sexual assault is not enough to raise criminal sexual assault to aggravated criminal sexual assault." *Id.* The appellate court then stated that as a result of this interpretation of the statute, "it follows" that no reasonable trier of fact could have found otherwise. *Id.* Thus, we reject the State's suggestion that we review this question under the standard applicable to a challenge to the sufficiency of the evidence: whether the evidence is so improbable, unsatisfactory, or inconclusive that it creates reasonable doubt of the defendant's guilt. *People v. Evans*, 209 Ill. 2d 194, 209 (2004).

¶ 6        The question we must answer is whether a defendant's knowingly exposing the victim of a sexual assault to HIV, thereby placing her at some risk of acquiring an infection that could eventually lead to her developing an incurable and potentially fatal disease, constitutes a threat or endangerment of her life during the commission of the offense. This is a question of statutory interpretation, subject to *de novo* review. *People v. Donoho*, 204 Ill. 2d 159, 172 (2003).

> "The principles guiding our analysis are well established. Our primary objective is to ascertain and give effect to legislative intent, the surest and most reliable indicator of which is the statutory language itself, given its plain and ordinary meaning. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). In determining the plain meaning of statutory terms, we consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in enacting it. *People v. Davis*, 199 Ill. 2d 130, 135 (2002). Where the language of the statute is clear and unambiguous, we must apply it as written, without resort to extrinsic aids to statutory construction. *People v. Collins*, 214 Ill. 2d 206, 214 (2005).
>
> If the language is ambiguous, making construction of the language necessary, we construe the statute so that no part of it is rendered meaningless or superfluous. *People v. Jones*, 214 Ill. 2d 187, 193 (2005). We do not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the expressed intent. *People v. Martinez*, 184 Ill. 2d 547, 550 (1998). The traditional canons or maxims of statutory construction are not rules of law, but rather are 'merely aids in determining legislative intent and must yield to such intent.' *In re Application of the County Treasurer*, 214 Ill. 2d 253, 259 (2005)." *People v. Perry*, 224 Ill. 2d 312, 323-24 (2007).

¶ 7        Because we must interpret the statute in its entirety, we must discern the meaning of the phrase "during *** the commission of the offense" in conjunction with the phrase "acted in such a manner as to threaten or endanger the life of the victim."

¶ 8        Section 12-14(a) lists 10 possible aggravating circumstances to the crime of criminal sexual assault. Nine of the 10 must have "existed during *** the commission of the offense" to qualify as aggravating circumstances. 720 ILCS 5/12-14(a) (West 2006). These nine circumstances include seven that require certain conduct by the accused (720 ILCS 5/12-14(a)(1), (2), (3), (4), (8), (9), (10) (West 2006)) and two that pertain to attributes of the

victim (720 ILCS 5/12-14(a)(5), (6) (West 2006)). By the plain language of the statute, none of these circumstances can elevate the crime of criminal sexual assault to aggravated criminal sexual assault unless they existed while the crime was being committed. Indeed, it would make little sense to have an aggravating factor for causing bodily harm to the victim (720 ILCS 5/12-14(a)(2) (West 2006)), if the accused caused the bodily harm in a separate incident apart from the sexual assault. Similarly, if the victim was one day short of her sixtieth birthday on the date of the assault, the accused cannot be said to have assaulted a victim "60 years of age or over when the offense was committed." 720 ILCS 5/12-14(a)(5) (West 2006).

¶ 9      The phrase "during the commission of the offense" is the focus of the defendant's argument. Although he admits that he exposed the victim to HIV, he argues that he did not threaten or endanger her life during the commission of the offense. Further, although her life might have been endangered at some time in the future if she had become infected, she did not contract the virus and, thus, her life was not in danger during the assault and her life will not be in danger in the future as a result of the assault.

¶ 10      Nevertheless, the State argues although the *act* that threatens the victim or endangers her life must occur during the commission of the offense, the threatened harm or the danger *itself* need not exist at that time. The State thus characterizes the appellate court's interpretation of the statute as requiring "an additional overt threatening act which could have caused immediate harm" to the victim's life and that this interpretation "usurps the function of the trier of fact."

¶ 11      We disagree. The appellate court did not interpret the statute to require an additional overt act by the defendant. Rather, the court gave effect to the express statutory requirement that the aggravating circumstance exist "during" the commission of the offense. If the circumstance alleged by the State to be a threat or endangerment of the victim did not exist during the commission of the offense, it cannot, as a matter of law, be used to elevate the crime from criminal sexual assault to aggravated criminal sexual assault.

¶ 12      We note that when the legislature found it appropriate to extend the time horizon for an aggravating circumstance, it did so expressly. The statute makes a specific exception to the "during *** the commission of the offense" requirement for paragraph (7): "the accused delivered (by injection, inhalation, ingestion, transfer of possession, or any other means) to the victim within his or her consent, or by threat or deception, and for other than any medical purposes, any controlled substance." 720 ILCS 5/12-14(a)(7) (West 2006). This particular aggravating circumstance would likely involve conduct occurring before the sexual assault, such as the administration of rohypnol, the so-called "date rape drug," by placing it in the unknowing victim's drink. Thus, the legislature extended the time horizon to encompass conduct that occurred prior to the assault itself so long as it occurred "as part of the same course of conduct as[ ] the commission of the offense." 720 ILCS 5/12-14(a) (West 2006). There is no similar language in subsection (a)(3) that would extend the time horizon for a threat or endangerment beyond the time involved in the actual commission of the crime.

¶ 13      We, therefore, agree with the appellate court that the aggravating circumstances of a threat or an endangerment of the life of the victim must exist during the commission of the

offense, that is, while the offender is engaging in the conduct that constitutes the offense.

¶ 14    The State does not argue that defendant "acted in such a manner as to threaten" the victim during the commission of the offense,[1] concentrating instead on the term "endanger." We note, however, that a threat, by its very nature, must be communicated to the object of the threat. See, *e.g.*, 720 ILCS 5/12-12(d)(1) (West 2006) (defining the statutory term "[f]orce or threat of force" to mean "the use of force or violence, or the threat of force or violence, including but not limited to *** when the accused threatens to use force or violence on the victim or on any other person, and the victim under the circumstances reasonably believed that the accused had the ability to execute that threat"). See also Black's Law Dictionary 1618 (9th ed. 2009) (defining "threat" as "A communicated intent to inflict harm or loss on another or on another's property, esp. one that might diminish a person's freedom to act voluntarily or with lawful consent <a kidnapper's threats of violence>.").

¶ 15    Thus, to act in a manner that threatens a victim, the offender must communicate the threat to the victim by word or deed. A risk of future harm is not a threat of harm. See Black's Law Dictionary 1442 (9th ed. 2009) (defining "risk" as "[t]he uncertainty of a result, happening, or loss; the chance of injury, damage, or loss; esp., the existence and extent of the possibility of harm").

¶ 16    A sexual assault creates many risks for the victim: the risk of being infected with a sexually transmitted disease, the risk of an unwanted pregnancy, the risk of posttraumatic stress. These and other consequences of the crime are among the reasons that sexual assault is a serious felony. These risks, however, are not threats because they are not communicated by the assailant to the victim during the commission of the offense. Thus, in the present case, the victim was not threatened by the defendant.

¶ 17    The State argues that defendant "acted in such a manner as to *** endanger the life of the victim" (720 ILCS 5/12-14(a)(3) (West 2006)), when he exposed her to HIV, relying on this court's construction of the term "endanger" in *People v. Collins*, 214 Ill. 2d 206, 218-19 (2005) (finding that the term "endanger" in the statute defining the offense of reckless discharge of a firearm did not require that a specific individual be placed in actual danger by the discharge of the firearm). The State also cites our decision in *People v. Jordan*, 218 Ill. 2d 255, 270 (2006) (finding that the term "endangerment" in the statute defining the offense of child endangerment did not require conduct " 'that will result or actually results in harm, but rather to conduct that could or might result in harm' " (quoting *Collins*, 214 Ill. 2d at 215).

¶ 18    Defendant notes that focusing on the meaning of the word "endanger" without considering whether the victim was in actual danger "during" the assault would violate the principle of statutory interpretation that we will not focus on words and phrases in isolation from other relevant portions of the statute. *People v. Glisson*, 202 Ill. 2d 499, 505 (2002).

---

[1]We are not asked to decide in the present case whether the phrase "threaten or endanger the life of the victim or any other person" requires that the threat must be a threat to kill the victim or another person, or if a threat to injure or maim the victim or another person would be sufficient to meet the elements of the crime.

¶ 19 We find *Collins* and *Jordan* to be of little assistance. The statute at issue in *Collins* defines the offense of reckless discharge of a firearm as "discharging a firearm in a reckless manner which endangers the bodily safety of an individual." 720 ILCS 5/24-1.5(a) (West 2004). We first interpreted the statutory language to conclude that reckless discharge of a firearm does not require "the intentional firing of a weapon knowingly and directly at someone." *Collins*, 214 Ill. 2d at 215. Indeed, the act of intentionally firing at a particular individual would be the offense of aggravated discharge of a firearm. 720 ILCS 5/24-1.2 (West 2010).

¶ 20 Relying on the principle that the legislature did not intend an absurd result and on the legislative history, this court concluded that in this particular statute, "endangered" does not mean "actually endangered" in the sense of being directly fired upon. *Collins*, 214 Ill. 2d at 216.

¶ 21 We might also have noted that the *mens rea* required for this offense is recklessness, not intent. "A person is reckless or acts recklessly, when [that person] consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow ***." 720 ILCS 5/4-6 (West 2006). Risk is the essence of recklessness. The discharge of a firearm is reckless when the act creates a substantial and unjustifiable risk to others.

¶ 22 However, the offense of aggravated criminal sexual assault is not a crime of recklessness; it requires more than disregarding the risk of future harm. By its plain language, it requires actual endangerment of the victim or another person during the commission of the offense. 720 ILCS 5/12-14(a)(3) (West 2006).

¶ 23 Finally, the offense of reckless discharge of a firearm does not require that the endangerment exist during the commission of the offense. Rather, the statute requires that someone be endangered as an immediate result of the discharge of the firearm. If the surrounding circumstances are such that one or more other persons are endangered by the act, the act is reckless.

¶ 24 Thus, in *Collins*, this court found sufficient evidence that others were endangered by the defendant's discharge of a firearm into the air as many as 15 times: two women who were inside the adjacent home, defendant's two codefendants who were present, and two officers who were approaching the defendant in his backyard. *Collins*, 214 Ill. 2d at 218. Given these facts, "any rational trier of fact could have found defendant guilty [of reckless discharge of a firearm] beyond a reasonable doubt." *Id.* at 218-19.

¶ 25 We conclude that *Collins* does not inform our interpretation of a statute requiring that "during the commission of the offense," the accused "endanger[ ] the life of the victim." In *Collins*, the word "endangerment" was interpreted in the context of a statute requiring a different mental state, recklessness, and that the accused endanger others *as a result of* his act, not that he endanger others *during* the commission of the act.

¶ 26 In *Jordan*, this court invalidated the portion of the child endangerment statute creating a mandatory rebuttable presumption of child endangerment if an individual leaves a child of six years of age or younger in a motor vehicle for more than 10 minutes. *Jordan*, 218 Ill. 2d at 266. Thus, the only provision in the statute regarding time or duration was severed. *Id.* at 267.

¶ 27    In the remaining statutory language, the offense of endangering the life or health of a child is defined as willfully causing or permitting "the life or health of a child under the age of 18 to be endangered" or permitting a child "to be placed in circumstances that endanger the child's life or health." 720 ILCS 5/12-21.6 (West 2006). After noting that the required mental state is willfulness, we quoted *Collins* for the proposition that the term "endanger" refers to "a potential or possibility of injury." *Jordan*, 218 Ill. 2d at 270. Thus, under this statute, the risk of injury is sufficient; actual injury is not required.

¶ 28    In response to the defendant's challenge to the sufficiency of the evidence, we concluded that a rational trier of fact could have found that the defendant knew he was placing his child's life or health at risk when he left the infant, who was dressed in a winter coat, gloves, and a hat, and covered with a blanket, alone in his car for 40 minutes to an hour when the outside temperature was "in the twenties." *Id.* at 270-71.

¶ 29    Again, the statute at issue in *Jordan* did not contain a requirement that the defendant endanger the victim during the commission of the crime. In addition, the nature of the crime requires the trier of fact to give some weight to the element of time. A child may or may not be endangered the moment the individual closes the car door and walks away, but the child's risk of harm increases with every passing minute. The trier of fact must determine, depending on the facts of each case, whether endangerment occurred. Ultimately, endangerment in this context is a question of fact.

¶ 30    Thus, although the statutes interpreted in these two cases did contain the term "endanger," the interpretation of these statutes does not assist us in the interpretation of section 12-14(a)(3), which requires that the endangerment "exist[ ] during *** the commission of the offense."

¶ 31    The State's analogy of transmission of HIV to administering a "slow acting poison" is not helpful. The State argues that HIV, which may take years or even decades to cause AIDS, is similar to a poison that causes no harm when administered, but slowly kills its victim. The analogy is apt only if the victim becomes infected with HIV as a result of a sexual assault. In such a case, the defendant can be convicted of aggravated criminal sexual assault, not because he endangered the life of the victim during the assault, but because he caused "bodily harm *** to the victim" (720 ILCS 5/12-14(a)(2) (West 2006)), by infecting her with a potentially deadly virus.

¶ 32    The State and the defendant also argue over the effect of the separate statute defining the offense of criminal transmission of HIV (720 ILCS 5/12-16.2 (West 2006) (now 720 ILCS 5/12-5.01)). This statute makes it a crime for a person who knows that he or she is infected with HIV to "engage[ ] in intimate contact with another." 720 ILCS 5/12-16.2(a)(1) (West 2010). This language encompasses both consented and unconsented contact. However, it is an affirmative defense if the "person exposed knew that the infected person was infected with HIV, knew that the action could result in infection with HIV, and consented to the action with that knowledge." 720 ILCS 5/12-16.2(d) (West 2010).

¶ 33    Thus, in the case of criminal sexual assault where the defendant was HIV-positive at the time of the offense and exposed the victim to the virus, he could be charged with aggravated criminal sexual assault if the victim is infected (720 ILCS 5/12-14(a)(2) (West 2010)), and

with criminal sexual assault and criminal transmission of HIV if the victim does not become infected (720 ILCS 5/12-16.2 (West 2010)).

¶ 34   The State describes this as a "windfall" for the HIV-positive offender, whose crime will not be elevated to an aggravated offense if the victim should happen to be spared the infection. However, if an individual is convicted of criminal transmission of HIV and criminal sexual assault, aggravated criminal sexual assault, or predatory criminal sexual assault of a child, the sentences must be imposed consecutively, rather than concurrently. 730 ILCS 5/5-8-4 (West 2010). As a result, an HIV-positive individual who commits a sexual assault but whose victim escapes infection will not receive a windfall; he will be punished with a consecutive sentence for knowingly exposing his victim to HIV. He will serve a longer sentence than the sex offender who is not HIV-positive, but shorter than the offender who actually infects his victim. This is the scheme the legislature has put in place.

¶ 35   We, therefore, hold that an accused does not commit aggravated criminal sexual assault as defined in section 12-14(a)(2) when he commits the crime knowing that he is HIV-positive.

¶ 36   As a practical matter, we note that the State's preferred interpretation of the statute could have significant unintended consequences. The State's reading of the statute, equating mere exposure to a communicable disease to endangering the life of a victim, could apply just as well to exposure to the HPV virus, which causes cervical cancer, or to exposure to hepatitis C, which can lead to liver cancer, or exposure to tuberculosis, which can be fatal.

¶ 37   In addition, interpreting the aggravated criminal sexual assault statute in this way could place at issue the victim's HIV status prior to the attack. If she were already HIV-positive, the assault could not have endangered her life. As a result, defendants in such cases could seek discovery of their victims' medical histories in an effort to negate this element of the crime. An HIV-positive defendant might also argue that his use of a condom during a sexual assault negated this element of the crime, and the jury would have to consider testimony regarding the breakage rates of condoms and whether the condom was used properly to determine whether the victim was or was not endangered. If it is the legislature's intent that sexual assault trials consider the victim's HIV status and the efficacy of condom use during rape, it can amend the statute accordingly.

¶ 38                                CONCLUSION

¶ 39   Defendant committed an horrific crime and has done immeasurable harm to his daughter. He deserves to be punished to the full extent of the law. However, despite the State's repeated assertion that we should view the evidence in this case "in the light most favorable to the prosecution," as if this were a question of the sufficiency of the evidence, we find that the plain language of section 12-14(a)(3) of the Criminal Code requires that the accused threaten the victim or endanger her life during the commission of the offense and that, as a matter of law, mere exposure of the victim to HIV during the commission of the offense did not threaten or endanger her life. We, therefore, affirm the judgment of the appellate court. With regard to sentencing, the appellate court correctly instructed the trial court that when defendant is resentenced for this criminal sexual assault, the sentence for criminal

transmission of HIV must be imposed consecutively to that sentence and to the sentences of 15 years for each of the two other counts of criminal sexual assault of which he was convicted.

¶ 40        Appellate court judgment affirmed.