2024 IL App (1st) 211246-U

No. 1-21-1246

Order filed March 1, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 18272 01 |
| | ) | |
| JOE GARCIA, | ) | Honorable |
| | ) | Patrick Coughlin, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE NAVARRO delivered the judgment of the court.
Justices Mikva and Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's convictions for aggravated criminal sexual assault are affirmed where the evidence was sufficient to establish he acted in a manner that threatened or endangered the victim's life when he held her down by her neck during the commission of the sexual assaults.

¶ 2    Following a bench trial, defendant Joe Garcia was found guilty of four counts of predatory criminal sexual assault and six counts of aggravated criminal sexual assault and sentenced to an aggregate term of 72 years in prison. On appeal, defendant argues his aggravated criminal sexual

assault convictions should be reduced to criminal sexual assault because the evidence was insufficient to establish he acted in a manner that threatened or endangered the life of the victim during the commission of the criminal sexual assaults. We affirm.

¶ 3     Defendant's convictions stem from events occurring from approximately March 2006 to September 2015 during which defendant sexually assaulted his stepdaughter, D.R. The indictment charged defendant with 62 sexual assault offenses. The State proceeded to trial on six counts of predatory criminal sexual assault and, relevant here, seven counts of aggravated criminal sexual assault. It nol-prossed the remaining counts. The aggravated criminal sexual assault counts charged that defendant knowingly committed acts of sexual penetration on D.R. (contact between defendant's penis and D.R.'s sex organ, anus, and mouth; defendant's mouth and D.R.'s sex organ; and an object and D.R.'s sex organ and anus) by the use or threat of force while defendant acted in such a manner as to threaten or endanger D.R.'s life (720 ILCS 5/12-14(a)(3) (West 2010)).[1] The record shows D.R. was born in March 1998.

¶ 4     We recite only the trial evidence relevant to the issue on appeal: whether the State proved the aggravating element of aggravated criminal sexual assault beyond a reasonable doubt.

¶ 5     At trial, D.R. testified she called defendant her step-father, although he and her mother never legally married. When she was about seven years old, she lived with her mother, brother, step-brother, and defendant. When she was seven years old, going on eight years old, defendant began groping her chest and vaginal areas over her clothing.

_____

[1] The statute for aggravated criminal sexual assault was amended and renumbered from 720 ILCS 5/12-14(a)(3) to 720 ILCS 5/11-1.30(a)(3) effective July 1, 2011, which occurred during the course of the conduct alleged. The substance of the aggravated criminal sexual assault statute and elements for the offense remain the same.

¶ 6     When D.R. was around eight years old, defendant inserted his penis into her mouth, which happened multiple times. Also when she was eight years old, defendant progressed to inserting his penis into her anus while she was unclothed, which happened "quite a lot."

¶ 7     When D.R. was around 9 or 10 years old, defendant began having vaginal sex with her every day while her mother was at work. He also initiated oral contact by putting his mouth directly onto D.R.'s breast and vaginal areas. Defendant initiated vaginal sex with D.R. around four or five days a week during the summer and every day during the school year through seventh grade. D.R.'s mother was never home during any of the incidents.

¶ 8     Defendant began inserting different objects into both D.R.'s vagina and anus when she was 13 years old. He would use her mother's vibrator in both areas, a home-made dildo made from "the thing you used to seal windows" in her vagina, and a butt plug in her anus. D.R. stated this happened multiple times and hurt her a lot. Defendant also inserted a screwdriver and other objects with a tip into her vagina multiple times, hurting her.

¶ 9     D.R. was hospitalized during her freshman year of high school because her mother believed she had behavioral problems and anger management issues. At the hospital, D.R. did not tell anyone about what defendant was doing to her because he threatened something would happen to her mother, who would be taken away and she would never see her again.

¶ 10    Defendant was also physically abusive toward D.R. from when she was about 7 to 17 years old. The physical abuse was usually in retaliation for her resisting defendant's sexual advances. Defendant told D.R. no one would believe her if she told them what was happening. Defendant also made verbal threats, telling D.R. her mother would be arrested and D.R. would be put into a

shelter and never see her mother again. Defendant also threatened to get her mother deported. D.R. believed defendant's threats.

¶ 11    The last time defendant initiated any sexual contact with D.R. was in September 2015 when she was 17 years old and a senior in high school. D.R. "pretty much told him [she] didn't want it any more," which resulted in fights between them the whole month. Defendant told D.R.'s school principal she was behaving badly at home and had behavioral problems. D.R. sent the vice principal of her high school, Alphonso Pearson, an email the week of September 20, 2015, telling him "pretty much the seven steps of abuse," including "getting beaten for no reason." She had a conversation with Pearson in person the next day where she told him about the sexual abuse, and the Department of Children and Family Services was called.

¶ 12    D.R. stated she did not tell anyone about the abuse when it started because she was scared as defendant always threatened to hurt whoever she told or "something would happen to [her]." Whenever she would resist having sex with defendant, he would beat her to get her to do it or lock her in the house. When she resisted having sex, defendant "[f]orce[d] [her] to have sex with him" and "held [her] down." Defendant "would put his hands on [her] neck holding [her] down." She had bruises on her arms and legs from what defendant did to her. Defendant would also take her glasses, which scared her because she could not see anything or defend herself from him.

¶ 13    The trial court found defendant guilty of four counts of predatory criminal sexual assault and, relevant here, six counts of aggravated criminal sexual assault (single counts of contact between defendant's penis and D.R.'s sex organ, defendant's penis and D.R.'s mouth, defendant's mouth and D.R.'s sex organ, and an object and D.R.'s anus, and two counts of contact between an object and D.R.'s sex organ). The court found defendant not guilty of the remaining two counts of

predatory criminal sexual assault and single count of aggravated criminal sexual assault (premised on contact between defendant's penis and D.R.'s anus). The trial court sentenced defendant to consecutive sentences of 9 years on each predatory criminal sexual assault count and 6 years on each aggravated criminal sexual assault count, for a total of 72 years in prison. Defendant timely appealed.

¶ 14    Defendant challenges the sufficiency of the evidence establishing the aggravating factor of aggravated criminal sexual assault: that he acted in a manner that threatened or endangered D.R.'s life during the commission of the offense.

¶ 15    In considering a challenge to the sufficiency of the evidence, the relevant inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Jackson*, 232 Ill. 2d 246, 280 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for weighing the evidence and credibility of witnesses and resolving conflicts in testimony. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-225 (2009). A reviewing court will not substitute its judgment for that of the trial court with respect to those issues. *Id.* A criminal conviction will not be set aside unless "the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *Id.* at 225.

¶ 16    As charged here, a person commits criminal sexual assault when he commits an act of sexual penetration by the use of force or threat of force. 720 ILCS 5/12-13(a)(1) (West 2010).[2] A person commits the offense of aggravated criminal sexual assault when he commits criminal sexual

---

[2] The statute for criminal sexual assault was amended and renumbered from 720 ILCS 5/12-13(a)(1) to 720 ILCS 5/11-1.20(a)(1) effective July 1, 2011, which occurred during the course of the conduct alleged. The substance of the criminal sexual assault statute and elements for the offense remain the same.

assault and, during commission of the assault, an aggravating factor exists. 720 ILCS 5/12-14(a) (West 2010). Defendant does not challenge the evidence establishing that he committed the criminal sexual assault offenses underlying his aggravated criminal sexual assault convictions.

¶ 17    Defendant challenges only the sufficiency of the evidence establishing the aggravating factor that elevated those assaults to aggravated criminal sexual assaults: during the commission of the assaults, he "acted in such a manner as to threaten or endanger the life of the victim." 720 ILCS 5/12-14(a)(3) (West 2010). The requisite conduct must be "overt acts" that threaten or endanger the life of the victim during the commission of the offense. *People v. Giraud*, 2011 IL App (1st) 091261, ¶ 30.   "[T]o act in a manner that threatens a victim, the offender must communicate the threat to the victim by *word or deed.*" (Emphasis added.) *People v. Giraud*, 2012 IL 113116, ¶ 15.

¶ 18    Viewing the evidence in the light most favorable to the State, a rational trier of fact could find defendant guilty of aggravated criminal sexual assault. D.R. testified she was scared of defendant, who threatened that "something would happen to [her]" if she told anyone about the sexual assaults. When she resisted having sex with him, he beat her "to get to do it," and "[f]orce[d] [her] to have sex with him" by "put[ting] his hands on [her] neck holding [her] down." D.R. had bruises on her arms and legs from what defendant did to her. A rational trier of fact could reasonably infer that defendant, an adult male, beating the young D.R. and holding her down by her neck with his hands with enough force to overcome her resistance to his sexual assaults was overt conduct threatening or endangering her life as required to prove aggravated criminal sexual assault.

¶ 19    Defendant nevertheless contends D.R.'s testimony, while credible, did not meet the aggravating threshold. Defendant argues D.R. did not testify he "pressed her neck, obstructed her windpipe, or otherwise impeded her breathing." Thus, he asserts, it would be unreasonable to infer defendant using his hands to hold D.R. down by her neck was an overt act that actually threatened or endangered her life. We disagree.

¶ 20    D.R. did not explicitly testify defendant impeded her breathing. However, such can reasonably be inferred from her description of defendant's overt acts of placing his hands on her neck to hold her down in order to force his sexual assaults on her as she resisted. It is reasonable to infer from D.R.'s testimony that defendant, an adult male, necessarily had to exert considerable force or pressure on her neck on order to hold her in place as he sexually penetrated her. See *People v. Wheeler*, 226 Ill. 2d 92, 117 (2007) (quoting *People v. Hall*, 194 Ill. 2d 305, 332 (2000) (the trier of fact is not required to " 'disregard inferences which flow normally from the evidence and to search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt.' ").

¶ 21    Defendant did not merely push D.R. down on the bed and rely on his prior abuse of her to force her compliance. See *People v. Singleton*, 217 Ill. App. 3d 675, 684, 687 (1991) (finding the defendant's overt act of pushing the minor female victim onto a bed could not be viewed as a life-threatening act sufficient to prove aggravated criminal sexual assault where he pushed her down on the bed and she had intercourse with him "again" because she was afraid of him given his prior domestic and sexual abuse). Defendant did not merely hold D.R. down by her arms or torso. He held her down by her neck, the vulnerable area of the human body easily susceptible to life-threatening pressure and the literal choke point of the body. We do not find the evidence regarding

the aggravating factor so improbable or unsatisfactory that no rational trier of fact could have found defendant guilty beyond a reasonable doubt of aggravated criminal sexual assault.

¶ 22    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 23    Affirmed.