# Illinois Official Reports

## Appellate Court

---

*People v. Miraglia*, 2013 IL App (1st) 120286

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KATHY MIRAGLIA, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-12-0286 |
| Filed | December 2, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where the appellate court found on direct appeal from defendant's convictions for criminal sexual assault that the trial court erred when it determined, outside defendant's presence, that there was no *bona fide* doubt as to her fitness to stand trial that would require a fitness hearing and remanded the cause to the trial court for a retrospective fitness hearing, the trial court properly rejected defendant's request for a jury determination of her retrospective fitness, since the issue was raised after the trial began and the statute provides that the court is to determine defendant's fitness at that time, and in defendant's case, the trial court's finding that she was fit at the time of the trial was not against the manifest weight of the evidence, especially in view of the testimony that she understood the nature of the proceedings and could assist in her defense, there was no conclusive evidence she was taking psychotropic medication at the time of the trial or was under any specific doctor's care, and there was no observation of any behavior suggesting unfitness. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04-CR-15651; the Hon. Gilbert J. Grossi, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal      Michael J. Pelletier, Alan D. Goldberg, and Emily S. Wood, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, William L. Toffenetti, and Margaret G. Lustig, Assistant State's Attorneys, of counsel), for the People.

Panel      JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Justices Cunningham and Delort concurred in the judgment and opinion.

## OPINION

¶ 1      The defendant, Kathy Miraglia, appeals from the circuit court order which both denied her a retrospective jury determination on the question of her fitness to stand trial and found her fit to stand trial. For the following reasons, we affirm.

¶ 2      Following a bench trial in 2006, the defendant was convicted of two counts of criminal sexual assault (720 ILCS 5/12-13(a)(4) (West 2004)) and sentenced to two consecutive four-year terms of imprisonment. The evidence adduced at trial revealed the following facts. In 2003, the defendant, a clinical psychologist at Hillside Academy High School, held group counseling sessions which included J.B., a 16-year-old male junior at the school. J.B. testified that he began to meet with the defendant in private sessions and that their conversations became "deeper." They eventually exchanged phone numbers and the conversations became sexual in nature. Thereafter, the defendant met with J.B. outside of school, and they engaged in sexual intercourse. On several occasions, the defendant bought liquor for J.B. and gave him money to buy marijuana, which they shared. Mike Miraglia, the defendant's husband, testified that on three separate occasions, he discovered letters written by the defendant to J.B., detailing the couple's drug and alcohol use and their sexual relationship.

¶ 3      Prior to trial, the State raised the question of the defendant's fitness to stand trial by informing the court that records indicated that the defendant was taking antidepressant medication and had checked herself into a mental health facility before her arrest in June 2004. Defense counsel requested a hearing outside of the defendant's presence to discuss the issue of her fitness to stand trial. The court expressed its reservations, but granted counsel's request and ordered the courtroom cleared. Defense counsel informed the court that the defendant had previously attempted suicide and had been hospitalized. He confirmed that she had been taking antidepressant medication, but could not verify the specific medication. The court noted that it

had not developed any *bona fide* doubt concerning the defendant's fitness, but opined that defense counsel was better situated to make such a judgment and elicited his opinion. After counsel concurred with the court's assessment, the court concluded that was "all we have to go on," and the matter proceeded to trial without a fitness hearing.

¶ 4    On direct appeal, the defendant argued, in relevant part, that she was denied her right to be present during a critical stage of the trial because the court discussed the issue of her fitness outside of her presence. This court reviewed the issue, finding that a proceeding at which a defendant's fitness to stand trial is discussed is a critical stage for purposes of a defendant's right to be present. *People v. Miraglia*, No. 1-06-2654 (2008) (unpublished order under Supreme Court Rule 23). We concluded that the trial court erred in excluding the defendant from the proceeding and remanded "the matter to the trial court for a retrospective fitness hearing." *Id.* We held that, if the trial court determined that the defendant was unfit for trial, her convictions should be vacated and the court should conduct further proceedings pursuant to section 104-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/104-10 (West 2004)). *Miraglia*, No. 1-06-2654. We further held that, if the trial court determined that the defendant was fit, her convictions and sentences shall stand. *Id.*

¶ 5    On remand, the matter was returned to Judge Grossi, the trial judge in Maywood who presided over the defendant's trial. The defendant requested that a jury be impaneled for purposes of retrospectively determining her fitness to stand trial. Thereafter, the matter was transferred to the criminal courthouse in Chicago where jury trials on fitness are conducted. On April 12, 2011, the State moved to strike the defendant's request for a jury determination on the issue of her fitness, asserting that she was not entitled to a jury because the proceeding was to take place after trial and after her convictions were entered of record.

¶ 6    On May 9, 2011, Judge Mary Brosnahan granted the State's motion, finding that the facts of the case did not present a scenario in which the defendant requested a jury determination of her fitness hearing prior to trial. Rather, the court determined that, under the facts presented here, the defendant was not entitled to a jury trial on the issue of her fitness as the issue of the defendant's fitness was first raised after her trial had begun. See *People v. Melka*, 319 Ill. App. 3d 431 (2000). The matter was then transferred back to Judge Grossi's courtroom in Maywood for a nonjury determination of the defendant's fitness.

¶ 7    On August 3, 2011, the fitness hearing proceeded before Judge Grossi. Dr. Christofer Cooper, a forensic psychologist, testified that he received the defendant's medical records, police reports, and transcripts of some of the trial court proceedings, including the defendant's statement in allocution. He also met with the defendant on September 22, 2008, for over two hours to evaluate her present fitness. Dr. Cooper explained that to evaluate a defendant's retrospective fitness, he considers the defendant's current fitness and assesses whether there have been any significant changes or differences in the defendant's mental state or brain functioning from the time of trial. Dr. Cooper noted that the defendant had a doctorate in psychology and had been employed as a school counselor at the time of her offense. After her arrest, the defendant worked full-time for Ameri-Suites Hotel until the time of her trial. At the time of her trial, the defendant stated she had been taking medications prescribed by Dr. Blaise Wolfrum. However, Dr. Cooper noted that Dr. Wolfrum's records showed that he had not

treated the defendant for approximately nine months before her trial. There was also no record of any prescriptions from Dr. Wolfrum. According to the records, the defendant was not under any doctor's care in June 2006.

¶ 8   Dr. Cooper testified that he also reviewed records from Dr. James Corcoran, who treated the defendant for anxiety and depression about two months after her conviction. Dr. Cooper found it relevant that the defendant did not exhibit any psychotic symptoms, such as hallucinations, delusions or confused thinking when she saw Dr. Corcoran. He also noted that the defendant was not seen by a psychiatrist or psychologist for any mental health treatment from the time of her trial in June 2006 until she saw Dr. Corcoran in August 2006.

¶ 9   Upon examination, Dr. Cooper found the defendant to be cogent and coherent and that she did not display any signs of disorganized thinking, confusion or psychotic symptoms. He acknowledged that, before her June 2004 arrest, the defendant was hospitalized for depression and anxiety for nine days and then reported ongoing symptoms after that point. However, based on her clinical history, Dr. Cooper opined that, although the defendant had a history of depression, that diagnosis did not render her unfit to stand trial. Dr. Cooper concluded that the defendant was fit to stand trial in June 2006, because there was no clinical indication that she suffered from significant symptoms of mental health disease that would have precluded or impeded her fitness at the time of trial. In his opinion, the defendant was able to assist in her defense in June 2006 and was able to understand the nature and purpose of the proceedings against her.

¶ 10   Dr. Peter Lourgos, a forensic psychiatrist, testified that he evaluated the defendant to determine her fitness to stand trial in June 2006. He reviewed her psycho-social history, police reports, and her medical and court records; he also interviewed the defendant. Dr. Lourgos noted that the defendant's statement in allocution demonstrated that, at the time of trial, she had "very clear and organized thoughts." He reviewed her medical records from 2004, which showed that the defendant had a history of depressive symptoms and anxiety. Dr. Lourgos testified that the defendant reported being on medication at the time of trial, but the medical records and the probation department records do not indicate that she was on any medication. Dr. Lourgos noted that the defendant was not being treated at the time of trial. He also noted that, after her conviction, the defendant saw Dr. Corcoran, who documented that she suffered from depression and anxiety. Dr. Lourgos agreed that the defendant's symptoms seemed to demonstrate situational depression, the result of the stress of her convictions, incarceration and pending divorce. Based upon his review of the defendant's medical history and the court transcripts, Dr. Lourgos concluded that the defendant understood the proceedings against her and participated in her defense. Dr. Lourgos noted that the defendant's history of depression did not include any evidence that her illness rendered her nonfunctioning as she completed her graduate education and maintained steady employment through the time of trial. Dr. Lourgos opined that the defendant was fit to stand trial in June 2006, because she was not suffering from a severe mental illness which would have impaired her understanding of the nature and purpose of the proceedings against her, the roles of the various court personnel, or her ability to assist in her defense.

¶ 11    The defense called Dr. Tony Allen Fletcher, a forensic psychologist, who testified that he conducted a retroactive fitness evaluation of the defendant and found her unfit at the time of trial. Dr. Fletcher stated that he relied upon collateral interviews he conducted with the defendant's family members, prior psychiatrist and prior attorney to evaluate her state of mind at the time of trial. He also reviewed her prior medical records. Dr. Fletcher testified that he learned that the defendant was severely depressed and had suicidal thoughts when she was treated at River Edge Hospital in 2004. Those records noted that the defendant had auditory hallucinations and delusional paranoid thoughts.

¶ 12    Dr. Fletcher also reviewed the defendant's medical records from August 2006, which he testified showed that she suffered from major depression after her conviction. He noted that Dr. Corcoran prescribed three different medications for the defendant's depression, mood, and anxiety. Dr. Fletcher also observed that, after hearing her sentence, the defendant collapsed and was placed on suicide watch at Cermak Hospital. He noted that the defendant has had depression and anxiety symptoms since her conviction. He also noted that Dr. Corcoran documented that the defendant had poor concentration, depressed mood, and poor decision-making ability when he saw her after her conviction.

¶ 13    Dr. Fletcher testified that the defendant's parents reported to him that, at the time of trial, the defendant appeared to be staring into space and neglected her appearance. They informed him that she did not understand the charges against her or her potential sentence. The defendant's brother related that, during the time of trial, he would find the defendant in a fetal position in bed, crying and incoherent. The defendant's trial attorney, Randy Franklin, told Dr. Fletcher that he knew the defendant was on medication but he did not know which drugs she was taking. Franklin reported that the defendant deferred a few decisions to him, and he considered her to be depressed. Franklin told Dr. Fletcher that the defendant, at times, was explosive and distraught and became confused about what was going on.

¶ 14    Upon interviewing the defendant, Dr. Fletcher noted that she was unable to appreciate the penalties she faced and was unable to "think things through for herself," but she understood the roles and purposes of the court personnel and understood the "factual information about what was going on." In his opinion, Dr. Fletcher did not believe that the defendant was fit to stand trial in June 2006, because she had major depressive disorder with psychotic features.

¶ 15    On cross-examination, Dr. Fletcher stated that he did not think the defendant understood the severity of the charges against her, but she knew that she was in the criminal court. He did not believe that she understood the nature and the purpose of the proceedings. Dr. Fletcher admitted that he did not review the trial transcripts and was unaware that the defendant made a statement in allocution.

¶ 16    Frederick Allen, the defendant's brother, testified that, in May 2004, the defendant called him and threatened to kill herself. He called the police to assist her and she was hospitalized. Allen traveled to Chicago to sign the defendant out of the hospital, but when he arrived, she was abrasive and incoherent. He chose not to sign her out at the time. At the time of the trial, Allen observed the defendant curled up in a fetal position and frantically crying. He described the defendant as incoherent and stated that she cried about not wanting to lose custody of her children. Allen tried to speak to the defendant about her trial, but she could not speak rationally

about the situation. She would tell him that probation was the only option because she had to be with her children. After her conviction, Allen helped the defendant write her statement in allocution. However, Allen denied that he told the defendant what to write.

¶ 17 In her statement in allocution, the defendant stated that she was sorry for what she had done. She explained that the past several years had been traumatic considering her divorce, a battle with cancer, and the criminal charges. She stated she cared for her elderly parents and her three children and that her marriage had been abusive. However, Allen testified that he was unaware that the defendant cared for their parents in any way. In allocution at trial, the defendant also stated that J.B. had sexually harassed her at school, drugged her, and fondled her. She claimed that he threatened her and threatened that his gang would kill her family if she told anyone about the incident. According to the defendant, J.B. also threatened her if she did not call him regularly, which explained the phone records admitted at trial. The defendant stated that she was too afraid to report any of this to the police. The defendant said that, on one occasion, J.B. raped her at her home. She denied that the letters that her husband found, which were admitted into evidence, represented her true feelings. The defendant expressed regret for her handling of the situation and stated that she acted out of fear and humiliation.

¶ 18 Following the retrospective fitness hearing, the trial court concluded that, based on the defendant's statement in allocution and the State's two doctors' testimony, she was fit to stand trial in June 2006. The court noted that Dr. Fletcher had not reviewed the defendant's statement in allocution. Moreover, the court noted that Dr. Fletcher's diagnosis was major depression, which was insufficient to render the defendant unfit to stand trial.

¶ 19 On November 17, 2011, the defendant filed a motion for reconsideration, arguing both that she should have received a jury determination on the question of her fitness and that the evidence supported a finding of unfitness. The trial court denied the motion, and this appeal followed.

¶ 20 The defendant first argues that, on remand, she should have been granted a hearing before a jury on the issue of her fitness to stand trial. We disagree.

¶ 21 In the initial proceedings before the defendant's trial, the State inquired as to whether the defendant was fit to stand trial because her medical records revealed that she had been prescribed psychotropic medication and had received in-patient mental health treatment. The trial court and defense counsel agreed that the defendant exhibited no signs of being unfit and therefore the court determined that there was no *bona fide* doubt of fitness which would require a hearing. On appeal, we determined that the court erred in making its determination outside of the defendant's presence. We did not determine whether the court's conclusion that no *bona fide* doubt existed as to the defendant's fitness was erroneous. We merely remanded the "matter to the trial court for a retrospective fitness hearing."

¶ 22 There is no constitutional right to a jury determination of a defendant's fitness to stand trial. *People v. Manning*, 76 Ill. 2d 235, 239 (1979). Rather, the provision for a jury determination of a defendant's fitness is statutory in origin. *Id.* Section 104-12 of the Code states:

"Right to Jury. The issue of the defendant's fitness may be determined in the first instance by the court or by a jury. The defense or the State may demand a jury or the court on its own motion may order a jury. However, when the issue is raised after trial has begun or after conviction but before sentencing, or when the issue is to be redetermined under Section 104-20 or 104-27, the issue shall be determined by the court." 725 ILCS 5/104-12 (West 2004).

¶ 23    Whether the defendant was entitled to a jury trial on the issue of fitness is a question of statutory interpretation subject to *de novo* review. *People v. Giraud*, 2012 IL 113116, ¶ 6. When interpreting a statute, our primary objective is to ascertain and give effect to legislative intent, which is done using the statutory language itself, given its plain and ordinary meaning. *Id.* In determining the plain meaning of statutory terms, we consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in enacting it. *Id.* Where the language of the statute is clear and unambiguous, we must apply it as written, without resorting to extrinsic aids to statutory construction. *Id.* Applying these principles, we consider the plain language of section 104-12 of the Code.

¶ 24    Section 104-12 provides that the State or the defense may demand or the trial court may order a jury determination of the question of a defendant's fitness to stand trial unless one of three situations occur: (1) the issue is raised after the trial has begun; (2) the issue is raised after conviction but before sentencing; or (3) the issue of fitness is being redetermined under section 104-20 or 104-27 of the Code (725 ILCS 5/104-20, 104-27 (West 2004) (which involve secondary determinations of fitness after an initial finding of unfitness)). It is clear that the third situation was not involved here as this case did not involve a second determination of the defendant's fitness under either section 104-20 or section 104-27 of the Code.

¶ 25    The parties, however, dispute whether the first two situations apply in this case. The State argues that the defendant did not demand a jury or fitness hearing until she filed her appeal and that a retrospective fitness determination cannot be considered to have been made in the first instance before the trial began. The defendant argues that her first opportunity to demand a jury occurred on remand, but the issue of her fitness was first raised before her trial.

¶ 26    Construing the language of the statute, giving its words their plain and ordinary meaning, we conclude that section 104-12 unambiguously provides that the defendant does not have a right to a jury determination of her fitness when the demand is made "after trial has begun." 725 ILCS 5/104-12 (West 2004). Section 104-12 of the Code explicitly states that either the defense or the State may demand a jury or the court may order one except "when the issue is raised after trial has begun." *Id.* After trial has begun, a defendant's fitness "shall be determined by the court." *Id.* In this case, neither the State nor the defense demanded nor did the court order a jury determination before the defendant's trial commenced. During pretrial proceedings, while in the presence of the defendant, the State raised the issue of fitness, but it did not demand a jury determination of her fitness to stand trial. The defendant, defense counsel, and the trial court also did not demand or order a jury determination of her fitness. It was not until the remand, long "after trial began," that the defendant raised the issue of a jury determination of her retrospective fitness. Because the issue was raised after trial began, the statute provides that the court, not a jury, was to determine the defendant's fitness to stand trial.

Therefore, based on the plain language of section 104-12 of the Code, the trial court did not err in refusing the defendant's request for a jury determination of her retrospective fitness.

¶ 27 We note that the trial court relied on *Melka*, 319 Ill. App. 3d at 443, for its decision that the defendant was not entitled to a jury determination of her retrospective fitness to stand trial. We do not find that persuasive because, unlike the defendant here, the defendant in *Melka* did not request a jury trial upon remand. *Id.* at 435-36. Nevertheless, the trial court's application of the statute was correct, even if its reliance on *Melka* was misplaced.

¶ 28 Next, we consider the defendant's argument that the trial court erred in determining that she was fit to stand trial. "The trial court's ruling on the issue of fitness will be reversed only if it is against the manifest weight of the evidence." *People v. Haynes*, 174 Ill. 2d 204, 226 (1996). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). Under the manifest weight standard, we give deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses. *Id.*

¶ 29 A defendant is presumed fit to stand trial (725 ILCS 5/104-10 (West 2004); *People v. Stephens*, 2012 IL App (1st) 110296, ¶ 90, *appeal denied*, No. 115299 (Ill. Jan. 30, 2013)), and the State has the burden of proving the defendant's fitness by a preponderance of the evidence (725 ILCS 5/104-11(c) (West 2004)). A defendant is unfit "if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104-10 (West 2004); *Stephens*, 2012 IL App (1st) 110296, ¶ 90. "Fitness speaks only to a person's ability to function within the context of a trial; a defendant may be fit to stand trial even though his mind is otherwise unsound." *Haynes*, 174 Ill. 2d at 226. Section 104-16 of the Code states that the trial court may consider evidence of the defendant's fitness, including but not limited to: his knowledge and understanding of the charge, the proceedings, and the functions of the participants in the trial process; his ability to observe and relate occurrences, especially those related to the offense involved; and his social behavior and orientation to time and place. See 725 ILCS 5/104-16 (West 2004).

¶ 30 In this case, there was ample evidence supporting the trial court's finding that the defendant was fit to stand trial in June 2006. The State presented Drs. Cooper and Lourgos, who both opined that, despite her depression and anxiety, the defendant was able to understand the nature and purpose of the proceedings against her and assist in her defense. Even Dr. Fletcher, the defense's expert, admitted that the defendant understood the roles of the trial court personnel, understood she was in criminal court, and understood the factual information surrounding the proceedings. Dr. Fletcher's diagnosis of depression was also consistent with the diagnoses of Drs. Cooper and Lourgos and with the diagnosis documented in the defendant's pretrial hospital stay. In addition, there was no conclusive evidence that the defendant was taking any psychotropic medication at the time of her trial or that she was under any specific doctor's care at that time. Dr. Fletcher also admitted that he had not read the defendant's statement in allocution, which demonstrated the defendant's ability to coherently discuss the events and the evidence related to her offense. Furthermore, neither the court nor

defense counsel observed any behavior by the defendant during the pretrial proceedings or the trial and sentencing hearing that suggested that she was unfit. Given the record before us, we cannot conclude that the trial court's finding of the defendant's fitness is against the manifest weight of the evidence.

¶ 31     Based on the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 32     Affirmed.