2020 IL App (1st) 181740-U

No. 1-18-1740

Order filed November 19, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | Nos. 16 CR 3744 16 CR 3745 |
| KENNETH MITCHELL, | ) ) | Honorable |
| Defendant-Appellant. | ) ) ) | Diane Gordon Cannon, Judge, presiding. |

JUSTICE HALL delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's convictions for one count of aggravated criminal sexual assault and one count of aggravated criminal sexual abuse are reversed where the evidence did not establish he threatened the victim's life during the commission of the offenses. Defendant's 40-year sentence for predatory criminal sexual assault of a child is affirmed. Cause remanded for sentencing on the counts on which defendant was found guilty, but not sentenced.

¶ 2    Following a joint bench trial in two cases, defendant Kenneth Mitchell was found guilty of

two counts of aggravated criminal sexual assault, four counts of criminal sexual assault, and six

counts of aggravated criminal sexual abuse in case number 16 CR 3745, and two counts of predatory criminal sexual assault of a child in case number 16 CR 3744. He was sentenced to a total of 75 years' imprisonment. On appeal, defendant contends the State failed to prove him guilty of the counts of aggravated criminal sexual assault, criminal sexual assault, and aggravated criminal sexual abuse that alleged he committed the offenses by the use or threat of force, or threatened the victim's life during the commission of the offenses. He also challenges his sentence, arguing the trial court failed to adequately consider mitigating factors and effectively imposed a life sentence. We reverse in part, affirm in part, and remand for sentencing.

¶ 3    In case number 16 CR 3745, defendant was charged with 14 counts of various sex crimes arising out of a series of incidents in which he sexually abused the minor D.G. Defendant does not raise any issues regarding counts IV, VII, VIII, XI, and XIII, all of which alleged D.G. was under 18 years of age and defendant was a family member when he performed various acts of sexual penetration and sexual contact on D.G.

¶ 4    Relevant here, counts I and II alleged aggravated criminal sexual assault (720 ILCS 5/12-14(a)(3) (West 1998)) premised on defendant's mouth making contact with D.G.'s vagina and his threat to kill her during the commission of the offense. Count III alleged criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 1998)) premised on defendant's mouth making contact with D.G.'s vagina by the use or threat of force. Counts V and VI alleged criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 1998)) premised, respectively, on defendant's penis making contact with D.G.'s vagina by the use or threat of force, and a separate incident of defendant's mouth making contact with D.G.'s vagina by the use or threat of force. Counts IX and X alleged aggravated criminal sexual abuse (720 ILCS 5/12-16(a)(5) (West 1998)) premised on defendant touching

D.G.'s breast and his threat to kill her during the commission of the offense. Counts XII and XIV alleged aggravated criminal sexual abuse  (720 ILCS 5/12-16(c)(1)(ii) (West 1998)) premised on defendant touching D.G.'s breast by the use or threat of force in two separate incidents.

¶ 5      In case number 16 CR 3744, defendant was charged with two counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 1998)), which alleged he knowingly committed acts of sexual penetration upon W.M. by inserting his finger into her vagina when W.M. was under 13 years of age. All charges under both case numbers were adjudicated in one bench trial.

¶ 6      D.G. testified she was 13 years old in the summer of 1998.[1] At that time, she lived with her mother, siblings, and defendant, whom she identified in court, and who was her mother's boyfriend. One night when D.G.'s mother was out of town, she and defendant watched television in defendant's bedroom. Defendant squeezed D.G.'s left breast with his hand underneath her gown. Defendant removed D.G.'s underwear, put on a condom, and laid on top of her. D.G. felt defendant's penis inside her and pushed him off her. Defendant removed the condom and put his lips, mouth, and tongue on D.G.'s vagina.

¶ 7      D.G. did not tell anyone what happened that night because she was "[a]fraid of what [defendant] might do" based on a prior incident in which defendant touched her buttocks. That time, when D.G. suggested she would tell her mother, defendant said, "I'll kill you, your mom is not going to believe what you're saying" and he would kill her family. D.G. "backed down" as a result of these threats, which made her feel "[a]fraid."

---

[1] Although D.G. and W.M. are now adults, we use their initials to protect their privacy in this sexual assault case. See *People v. Munoz-Salgado*, 2016 IL App (2d) 140325, ¶ 1 n.1.

¶ 8     Five or six times thereafter in the summer of 1998, defendant entered D.G.'s bedroom at night, moved her underwear to the side, placed his lips and tongue on D.G.'s vagina, and squeezed her breasts. In the fall of 1998, defendant did the same thing more times than D.G. could count. Defendant continued to do this at least once a week through 2001. When defendant put his mouth on D.G.'s vagina, he did not say anything. D.G. did not tell anyone what defendant had done because she was "afraid he would kill [her] family." Defendant's acts stopped when D.G. moved out of the house in the summer of 2001. She did not report the abuse to police until she was an adult, when she learned her younger sister, W.M., had also been abused by defendant.

¶ 9     W.M. testified she was eight years old in the summer of 1998. At that time, she lived with her sister, D.G., as well as her mother and defendant, whom she identified in court. One day that summer, W.M. and defendant were alone in the house. W.M. went into defendant's bedroom, sat on the bed, and watched television with him. Defendant turned on pornography and asked W.M. to let him see if she was "horny." W.M. did not know what that meant and said "yes." Defendant put his fingers inside her vagina, but did not say anything. W.M. did not react, so defendant stopped. W.M. did not tell anyone what happened because she was "unsure and *** confused as to what had just happened to [her]."

¶ 10    Defendant inserted his fingers into W.M.'s vagina every week or two until approximately 2001. W.M. did not tell anyone what defendant was doing to her because she "was scared because he had threatened [her]." Defendant said he would tell her mother she had been "cursing him out," which made W.M. feel "scared" because she knew her mother would take his side.

¶ 11    Defendant moved for a directed finding, which was denied.

¶ 12    Defendant testified, denying he had any sexual contact with D.G. or W.M.

¶ 13    The court found defendant guilty on all counts in both cases, except for two counts of criminal sexual assault premised on his penis and mouth making contact with D.G.'s vagina by use or threat of force (counts V and VI in case number 16 CR 3745). The court explained it acquitted defendant of counts V and VI because it did "not find that the Defendant ever threatened the victim in this case, threatened or – *** there were threats of hurting the mother. There was no – during the attack, there was no force used, no testimony of force or threat of force."

¶ 14    Defendant filed a motion for new trial, which argued the trial court erred in finding him guilty of the aggravated criminal sexual assault, criminal sexual assault, and aggravated criminal sexual abuse counts premised on his use or threat of force and threatening D.G.'s life during the assaults, because the trial court found he did not use or threaten force when it acquitted him of counts V and VI. The court denied the motion for a new trial, explaining that

> "[it] did misspeak with regards to *** Counts [V] and [VI]. Due to the age, the position of authority that being an older man, the boyfriend of the victim's mother, all of the circumstances under which these assaults occurred there was force in each and every assault used [b]ased on the credibility of the witnesses *** Force was used."

¶ 15    At the sentencing hearing, the court stated it would not reverse its acquittal of defendant on counts V and VI, even though it found defendant had used force in committing the offenses. The court also explained its acquittal on those counts did

> "not mean that the witnesses were not believed in regards [sic.] to those. It was proof beyond a reasonable doubt and perhaps, to my mistake, mercy on you at that time. But the witnesses spoke credibily [sic.], clearly to all counts *** I believe they told the truth clearly and credibly as to all incidences."

The court stated it would not consider counts V and VI in passing sentence.

¶ 16    The State corrected defendant's presentence investigation report (PSI) to include a 2011 conviction for felony unlawful use of a recording. The PSI showed defendant had prior convictions for domestic battery in 2001, escape and burglary in 1987, and attempt burglary in 1983. It reflected his employment history, working two jobs in the five years prior to his arrest in this case, and his "very good relationship" with his daughters.

¶ 17    In aggravation, the State presented victim impact statements from D.G. and W.M. In mitigation, defendant pointed to his age of 52 years, that all his prior felony convictions except one were more than 10 years old, and that he had never been to prison. Defendant also noted his employment history, ties to his community, and his insistence on his innocence.

¶ 18    In case number 16 CR 3745, the court sentenced defendant to 30 years' imprisonment on count I. It merged counts II, III, IV, VII, and VIII into count I. The court also sentenced defendant to 5 years' imprisonment on count IX, to run consecutively to the 30-year sentence. It then merged counts X through XIV into count IX.[2] In case number 16 CR 3744, the court sentenced defendant to two consecutive 20-year sentences.

¶ 19    In passing sentence, the court explained it reviewed the PSI, the victim impact statements, the facts of the case, and "all the statutory factors set out in aggravation and mitigation." The court agreed defendant "appear[ed] to be a law-abiding citizen," but noted that is "the problem of sex offenses," that "[p]eople can walk the streets, drive cars, work, conduct a seemingly normal life, all the while being, in reality, sexual predators adding up victims wherever they go." The court

---

[2] Although the trial court merged counts X through XIV into count IX, the mittimus shows sentences imposed on counts X through XIV. The court's oral pronouncement controls. See *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 87.

explained its sentence was based on the "protection of society," because defendant "would be somebody that you might introduce your children to and *** leave your children with. All the while putting them in harm's way." As a result of defendant's "attacks," a family "will be forever changed."

¶ 20    Defendant filed a motion to reconsider sentence, which argued his sentence did not consider his potential for rehabilitation, his lack of a history of violence, and his employment history. At the hearing on this motion, defendant reiterated his lack of violent behavior, the age of his prior felony convictions, and his employment history. The court denied this motion, noting it took his criminal history, social history, work history, and the facts of the case into consideration, including the years of "mental torture" and "physical abuse" he inflicted, and that the sentence it imposed was "not near" the maximum defendant could have received. The court reiterated the protection of society demanded the sentence for the protection of everyone defendant would come into contact with.

¶ 21    On appeal, defendant first challenges all of the trial court's findings of guilt premised on his commission of the offenses by use or threat of force, or his threat to D.G.'s life during the commission of the offenses. These are sentenced counts I and IX, and merged/unsentenced counts II, III, X, XII, and XIV in case number 16 CR 3745.[3]

¶ 22    We do not have jurisdiction to review the merits of any of the counts on which the trial court found defendant guilty, but merged and did not pass sentence.[4] Our "jurisdiction extends

---

[3] Defendant does not challenge the trial court's findings of guilt on counts IV, VII, VIII, XI, or XIII in case number 16 CR 3745, or on either count in case number 16 CR 3744.

[4] Defendant's reply brief concedes we do not have jurisdiction over counts II and III under *People v. Relerford*, 2017 IL 121094. However, he effectively requests vacatur of the guilty findings of those counts in that he argues he should not be sentenced on them on remand because the State failed to prove he threatened D.G.'s life during the offenses, or committed the offenses by use or threat of force. In

only to final judgments and \*\*\* there is no final judgment in a criminal case unless a sentence has been imposed." *Relerford*, 2017 IL 121094, ¶ 71. In such cases, we may remand for sentencing on the merged counts, even though there was no final order on those unsentenced counts. *Id.*, ¶ 75; *People v. Miller*, 2019 IL App (1st) 161687, ¶ 53. However, *Relerford* makes clear that we, the appellate court, have no jurisdiction to determine the validity of "unsentenced convictions." *Relerford*, 2017 IL 121094, ¶ 75. Accordingly, we will not consider the merits of defendant's challenges to counts II, III, X, XII, and XIV in case number 16 CR 3745.

¶ 23      We do have jurisdiction to consider the merits of defendant's challenges to counts I and IX. Defendant argues, and the State agrees, the evidence was insufficient to establish his guilt of aggravated criminal sexual assault (count I) and aggravated criminal sexual abuse (count IX) because the evidence did not establish he threatened to kill D.G. during the commission of those offenses as charged. See 720 ILCS 5/12-14(a)(3) (West 1998); 720 ILCS 5/12-16(a)(5) (West 1998). We agree. See *People v. Giraud*, 2012 IL 113116, ¶ 11 ("If the circumstance alleged by the State to be a threat or endangerment of the victim did not exist during the commission of the offense, it cannot, as a matter of law, be used to elevate criminal sexual assault to aggravated criminal sexual assault."); *People v. Koppa*, 184 Ill. 2d 159, 162 (1998) (for purposes of aggravated criminal sexual abuse, aggravating factor must have existed during the commission of the offense). D.G.'s testimony established defendant threatened to kill her at some point prior to the offenses, *i.e.*, when D.G. said she would tell her mother that defendant grabbed her buttocks, and defendant threatened to kill her. Accordingly, we reverse defendant's convictions as to counts I and IX in

---

addition, defendant's reply brief concedes we do not have jurisdiction over counts X and XII because he was not sentenced on those counts.

case 16 CR 3745. We remand case number 16 CR 3745 for sentencing on all remaining merged/unsentenced counts. See *Relerford*, 2017 IL 121094, ¶ 75.

¶ 24    Defendant next challenges his aggregate sentence of 75 years' imprisonment, arguing it is effectively a life sentence that does not take into account the possibility of rehabilitation. He also contends the trial court failed to adequately consider mitigating factors such as his employment and criminal histories.

¶ 25    A trial court's sentencing decision is entitled to great deference, and we review a sentencing decision for abuse of discretion only. *People v. Snyder*, 2011 IL 111382, ¶ 36. A sentence within the statutory guidelines is presumed to be proper, and only constitutes an abuse of discretion if it is greatly at variance with the spirit and purpose of the law, or is manifestly disproportionate to the nature of the offense. *Id.*

¶ 26    The most important factor in determining a sentence is the seriousness of the crime. *People v. Alexander*, 239 Ill. 2d 205, 214 (2010). One factor in mitigation is a defendant's lack of criminal activity for a substantial period before the offense at issue. 730 ILCS 5/5-5-3.1(a)(7) (West 2018). The trial court may also consider a defendant's character, social environment, age, and habits. *People v. Minor*, 2019 IL App (3d) 180171, ¶ 27. A defendant's rehabilitative potential is relevant, but is not entitled to greater weight than the seriousness of the offense. *Alexander*, 239 Ill. 2d at 214.

¶ 27    The existence of mitigating factors does not require a minimum sentence and does not preclude a maximum sentence. *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123. We presume the trial court considered all of the mitigating factors, and a defendant must present affirmative evidence the trial court failed to consider mitigating factors to overcome that presumption. *People*

*v. Gordon*, 2016 IL App (1st) 134004, ¶ 51. We do not substitute our judgment for that of the trial court simply because we might have weighed the sentencing factors differently. *People v. Alvarez*, 2012 IL App (1st) 092119, ¶ 61.

¶ 28 Because we reversed defendant's convictions on counts I and IX in case number 16 CR 3745, we necessarily vacated his sentences on those counts. Thus, all that remains is his total 40-year sentence for both counts of predatory criminal sexual assault of a child in case number 16 CR 3744. The sentencing range for predatory criminal sexual assault of a child is that of a Class X felony, which is 6 to 30 years. 720 ILCS 5/12-14.1(a)(1), (b)(1) (West 1998); 730 ILCS 5/5-8-1(a)(3) (West 1998); 730 ILCS 5/5-4.5-25(a) (West 2018). The trial court imposed a sentence of 20 years on each count, to run consecutively. Defendant's sentences were within the statutory guidelines, so we presume they were proper. See *Snyder*, 2011 IL 111382, ¶ 36. Defendant can only overcome this presumption by showing his sentences are greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offenses. See *Id.*

¶ 29 Defendant has not made such a showing. The most important factor is the seriousness of the crimes. *Alexander*, 239 Ill. 2d at 214. Here, defendant sexually abused a young girl who lived in his home and who was left by her mother in his care. His abuse of W.M. was frequent and lasted approximately three years. The trial court's consideration of "the pain, the destruction of childhoods, destruction of lives, present and future" defendant caused, as well as the danger he presented to society, was appropriate. We cannot conclude that such sentences are manifestly disproportionate to the nature of the offenses given the facts of this case.

¶ 30 Defendant's claim the trial court imposed a *de facto* life sentence is moot, as we have vacated his 35-year sentence in case number 16 CR 3745. He also argues the trial court failed to

consider mitigating factors such as his employment history and lack of violent behavior. To the extent defendant asks us to reweigh the aggravating and mitigating evidence, we are prohibited from doing so. See *Alvarez*, 2012 IL App (1st) 092119, ¶ 61.

¶ 31      The record confirms the trial court considered the mitigating factors defendant cites. The trial court stated it had reviewed defendant's PSI, which contained information about his social and employment histories, and at the sentencing hearing, the PSI was corrected to reflect defendant's nonviolent criminal history. We presume the trial court considered this information (*People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 20), and defendant has presented nothing to rebut that presumption. Defendant also raised the same arguments at the sentencing hearing and in his motion to reconsider sentence as he does on appeal. Thus, the trial court not only read the mitigating evidence in the PSI; it heard the mitigating evidence argued as well. The court is not only presumed to have considered it, but specifically stated it took defendant's criminal, social, and work histories into consideration. Thus, defendant has failed to establish the trial court disregarded any mitigating evidence.

¶ 32      For the foregoing reasons, we reverse defendant's convictions for aggravated criminal sexual assault (count I) and aggravated criminal sexual abuse (count IX) in case number 16 CR 3745. We remand case number 16 CR 3745 for sentencing on all remaining counts, as appropriate. We affirm defendant's sentences with respect to both counts in case number 16 CR 3744.

¶ 33      Reversed in part, affirmed in part, and remanded.